

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
07/01/2016

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 14-34031 |
| CHIRON EQUITIES, LLC, | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| | § | |
| | § | |
| VIRGINIA ANGEL, TRUSTEE OF | § | |
| THE GOBSMACK GIFT TRUST | § | |
| | § | |
| Plaintiff | § | Adversary No. 16-03100 |
| | § | |
| v. | § | |
| | § | |
| KYLE TAUCH AND K REALTY | § | |
| DEVELOPMENT, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION REGARDING PLAINTIFF'S REQUEST
## FOR TEMPORARY INJUNCTION
### [This Memorandum Opinion Relates to Adv. Doc. No. 1]

### I. Introduction

This Memorandum Opinion concerns an acrimonious dispute involving the two shareholders of the corporate debtor and the wife of one of these shareholders. Specifically, the fight centers around whether the claims brought by one shareholder against the other in a state court lawsuit are direct claims of that shareholder or derivative claims of the debtor corporation that the shareholder has no standing to bring. Moreover, the wife of the shareholder who is being sued in state court asserts that the other shareholder has no standing to bring these claims because she (through her trust) purchased these causes of actions at an auction held in this Court in 2015; therefore, she contends that the shareholder's prosecution of these claims against her

1

husband constitutes a theft of these assets.  Further, she points out that this shareholder participated at the auction and has known all along that her trust purchased these claims from the debtor corporation's Chapter 7 estate.  Under these circumstances, she requests this Court to impose an injunction against the shareholder who is prosecuting the claims in state court against her husband.

Pursuant to Federal Bankruptcy Rule 7052, the Court makes the following findings of fact and conclusions of law regarding the plaintiff's request for a temporary injunction.  The Court does so in the wake of an evidentiary hearing held on May 25, 2016 (the "TI Hearing"). To the extent that these written findings of fact and conclusions of law conflict with the oral findings of fact and conclusions of law that this Court made on the record at the hearing held on June 14, 2016, the former shall govern.  To the extent that these written findings of fact and conclusions of law do not encompass any of the oral findings of fact and conclusions of law that this Court made on the record at the hearing held on June 14, 2016, the latter shall supplement the former.  For the reasons set forth herein, the Court grants the temporary injunction.

## II. Findings of Fact

1. K Realty Development, LLC ("KRD"), an investment company, is owned solely by Kyle Tauch ("Tauch") (collectively, the "Defendants").  [Hr'g Tr. 61:24–62:2, May 25, 2016].

2. Virginia Angel ("Angel") is the trustee of the Gobsmack Gift Trust (the "Plaintiff"), a creditor of Chiron Equities, LLC, the debtor in the main case (the "Debtor").  [Hr'g Tr. 15:23–16:12, May 25, 2016].

3. Jay Krasoff ("Krasoff") is the husband of Angel.  [Hr'g Tr. 22:25–23:1, May 25, 2016].

2

4. The Debtor is a privately-held company with two members.   KRD has majority ownership and Krasoff has the minority ownership.  [Plaintiff's Ex. No. 6, pp. 9–10 of 11].

5. The Debtor was formed in the fall of 2007.  [*Id.* at p. 11 of 11]; [Hr'g Tr. 58:24–59:1, May 25, 2016].

6. Krasoff initially managed the Debtor, but was later replaced in April of 2012 by Tauch, who then became the managing member of the Debtor.  [Hr'g Tr. 49:9–12, May 25, 2016].

7. On July 1, 2011, KRD and Krasoff, among others, executed a Memorandum of Understanding (the "MOU").  [Plaintiff's Ex. No. 1, p. 23 of 25].  The purpose of the MOU was to "establish operating guidelines" and to "clarify ownership rights in [*the Debtor*]."  [*Id.*].  The MOU contains the following paragraph:

> With respect to Chiron Equities and its affiliated companies (the "Companies") any person individually or as an employee or representative of any Company agrees to 1) never remit, expend or transfer funds in any form, incur debt, or divert income away from any Company without the prior written approval of Board of Directors. Until the particulars of a Board are agreed to by Walt, Eric, Jay, AND Kyle, Kyle will have full control as if he were the Board of Directors. Expenditures of the Companies will be made in conformance with a budget preapproved in writing by both the preparer of the budget and Board of Directors. Until the particulars of a Board are agreed to by Walt, Eric, Jay, AND Kyle, Kyle will have full control as if he were the Board of Directors.

[*Id.*].  The following parties signed the MOU: (a) KRD; (b) Chiron Financial Advisors, LLC; (c) Walter McNeil; (d) Krasoff; and (e) Eric Israel.  [*Id.* at p. 24 of 25].

3

8. Prior to the Debtor's bankruptcy filing, KRD remitted substantial monies into the Debtor's accounts in order to fund the Debtor's operations. [*See* Hr'g Tr. 73:4–74:6, May 25, 2016].

9. On July 23, 2014 (the "Petition Date"), four creditors—Angel, Strategic Network Consulting, LLC, Roman Law Firm, P.C., and the Law Office of Rikki M. Rutchik— filed an involuntary Chapter 7 petition against the Debtor. [Main Case No. 14-34031, Doc. No. 1].

10. On August 15, 2014, the Debtor filed its Motion to Dismiss, requesting that this Court dismiss the involuntary petition. [Main Case No. 14-34031, Doc. No. 15].

11. On the same day (i.e., on August 15, 2014), the Plaintiff filed her Motion to Join in Involuntary Petition Pursuant to 11 U.S.C. § 303(c) and Fed. R. Bankr. P. 1003(b). [Main Case No. 14-34031, Doc. No. 20].

12. On August 19, 2014, September 3, 2014, and September 4, 2014, this Court held hearings on the involuntary petition, and then made oral findings of fact and conclusions of law; orally granted the involuntary petition; and orally denied the Motion to Dismiss. Thereafter, the Court entered an Order: (1) Granting Petitioning Creditors' Chapter 7 Involuntary Petition; (2) Denying Debtor's Motion to Dismiss; and (3) Setting Status Conference for 1:30 P.M. on November 13, 2014. [Main Case No. 14-34031, Doc. No. 42].

13. On October 17, 2014, Tauch, in his capacity as the manager of the Debtor, signed under penalty of perjury the Debtor's Schedules and Statement of Financial Affairs ("SOFA"), and these documents were filed on this same day. [Plaintiff's Ex. Nos. 5 & 6].

14. In Schedule B, Tauch represented that the Debtor held the following claims, among others:

> Breach of fiduciary duties, denuding business of assets, and conspiracy related thereto, against Jay Krasoff, 6308 Haskell, Houston, Texas 77007, Virginia Angel, 6308 Haskell, Houston, Texas 77007 and other John Does, unknown.
>
> Claims and causes of action as to creditors identified with "disputed" in Schedule F.

[*Id.*].

15. One of the creditors disclosed on Exhibit F is Krasoff, and the debt owed to him is scheduled as "disputed." [*Id.* at p. 26 of 47]. Therefore, Tauch, on behalf of the Debtor, represented that the Debtor not only had claims against Krasoff for breach of fiduciary duties, denuding business of assets, and conspiracy, but also for any other "claims and causes of actions."

16. In the SOFA, Tauch, on behalf of the Debtor, affirmatively represented twice that the "Memorandum of Understanding dated July [1], 2011" was "never consummated." [Plaintiff's Ex. No. 6, pp. 9–10 of 11].[1]

17. On September 10, 2014, Randy Williams was appointed as the trustee of the Debtor's Chapter 7 estate (the "Trustee").

18. On March 20, 2015, the Trustee filed a Motion for an Order (I) Approving Sale Procedures and (II) Authorizing the Sale of Claims Pursuant to 11 U.S.C. § 363 Free and Clear of All Liens, Claims and Encumbrances (the "Motion for Order Approving Sale"). [Plaintiff's Ex. No. 2].

---

[1] The MOU is part of Plaintiff's Ex. No. 1. This MOU is dated July 1, 2011, whereas the SOFA refers to the date of "July 11, 2011" with respect to the MOU. The Court believes that this is a typographical error, as throughout the TI Hearing, the parties made reference to only **one** MOU. [*See* Finding of Fact No. 7]. Thus, there are **not** two MOUs; there is only one.

19. On April 22, 2015, this Court granted the Motion for Order Approving Sale by entering an order on the docket (the "Sale Order"). [Plaintiff's Ex. No. 3]. KRD and Tauch were aware of the Sale Order, and did not appeal it, nor did anyone else. It became a final, non-appealable order on May 7, 2015. The Sale Order expressly set forth that an auction would be held on May 20, 2015, at 1:30 P.M., so that the Trustee could sell the following assets owned by the Debtor:

(i.) any and all claims and causes of action against pre-petition officers, directors, and or managers of Chiron Equities, LLC;

(ii.) the avoidance actions arising from chapter 5, Title 11, United States Code;

(iii.) the claims and causes of action disclosed in Schedule B(16)[2] and B(21)[3] of the Debtor's Schedules of Assets and Liabilities[];

(iv.) the assets disclosed in Schedule B(35)[4] of the Debtor's Schedules of Assets and Liabilities;

(v.) the books and records of Chiron Equities, LLC, subject to allowing the Trustee access to same for the purpose of reviewing and/or objecting to proofs of claim; and,

(vi.) any and all other claims, debts, causes of action, rights or demands, hereafter of Chiron Equities, LLC, accrued or unaccrued, contingent or

---

[2] The Debtor's Schedule B(16)—entitled "Accounts receivable"—sets forth the following description: "Amounts due from sale of 100% membership interest in Rock Bottom LLC to Piping Rock LP, pursuant to Assignment of Membership Interest in Rock Bottom LLC dated September 30, 2011. (Face amount $120,000.00)." [Plaintiff's Ex. No. 5, p. 5 of 47].

[3] The Debtor's Schedule B(21)—entitled "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims"—sets forth the following description:

Breach of fiduciary duties, denuding business of assets, and conspiracy related thereto, against Jay Krasoff, 6308 Haskell, Houston, Texas 77007, Virginia Angel, 6308 Haskell, Houston, Texas 77007 and other John Does, unknown.

Breach of fiduciary duties owed client in course of legal representation by Rikki M. Rutchik, Law Offices of Rikki M. Rutchik, PLLC, PO Box 794254, Dallas, TX 75379-4254.

Breach of fiduciary duties owed client in course of legal representation by Stephanie Roman, Roman Law Firm, PLLC, 4141 Southwest Freeway, Suite 250, Houston, TX 77027-7321.
Claims and causes of action as to creditors identified with "disputed" in Schedule F.

[*Id.* at p. 6 of 47].

[4] The Debtor's Schedule B(35)—entitled "Other personal property of any kind not already listed"—sets forth the following property description: Possible books and records of Debtor, if any, in storage located at Private Mini Storage 6300 Washington Avenue Houston, TX 77007 in possession, custody and control of Congress Materials LLC (unknown if in fact there are books and records). [*Id.* at p. 8 of 47].

> noncontingent, whether arising from contract, tort, strict liability, warranty, misrepresentation, fraud, negligence, or any other claim, at law or in equity, whether asserted theretofore or not, whether cognizable judicially or by any administrative or regulatory agency, at the present time or created by statute or judicial action

(collectively, the "Sale Order Claims"). [*Id.*].

20. On May 20, 2015, at approximately 1:30 P.M., the Court conducted an auction on the record in open court during which the Trustee sold the Sale Order Claims to the Plaintiff. Tauch, as the representative of KRD, actively participated at this auction, but the Plaintiff ultimately outbid him for the purchase of the assets. [Hr'g Tr. 20:7–21:8, May 25, 2016]. The highest bid, which came from the Plaintiff, was $31,500.00. [Plaintiff's Ex. No. 4, p. 2 of 6].

21. After the auction was conducted, the Trustee executed a Bill of Sale to the Plaintiff conveying the Sale Order Claims owned by the Debtor. [*Id.* at p. 3 of 6]. Thus, as of May 20, 2015, the Plaintiff owned the Sale Order Claims.

22. On June 22, 2015, KRD filed a proof of claim asserting a claim in the amount of $5,500,000.00. [Claim No. 17 on Claims Register]. Tauch, as the "manager" of KRD, signed the proof of claim. [*See id.* at p. 2 of 15].

23. On April 8, 2016, KRD filed suit against Krasoff in the District Court of Harris County, Texas, and this suit was assigned Cause Number 2016-22603 (the "State Court Suit"). [Plaintiff's Ex. No. 1, pp. 13–22 of 25]. In its original State Court Suit petition, KRD asserted several causes of action against Krasoff for: (a) fraud; (b) breach of fiduciary duty; (c) breach of contract; and (d) fraudulent concealment. [*Id.* at pp. 17–20 of 25].

24. On May 11, 2016, the Plaintiff initiated the pending adversary proceeding in this Court by filing a Complaint for Declaratory Judgment and Request for Preliminary and

Permanent Injunction (the "Complaint"). [Adv. Doc. No. 1]. In the Complaint, the Plaintiff asserts that KRD, in the State Court Suit, is prosecuting claims against Krasoff that the Plaintiff owns by virtue of the auction held in this Court on May 20, 2015 and the Bill of Sale executed thereafter by the Trustee in exchange for the $31,500.00 paid to him by the Plaintiff. The Plaintiff requests this Court to enjoin both KRD and Tauch from prosecuting these claims in the State Court Suit.

25. On or about May 23, 2016, KRD filed its First Amended Petition in the State Court Suit (the "First Amended Petition"). [Plaintiff's Ex. No. 1, pp. 1–9 of 25]. In this First Amended Petition, KRD asserts three causes of action against Krasoff: (a) fraud in the inducement and/or fraudulent concealment (the "Fraud Claim"); (b) breach of fiduciary duty (the "Fiduciary Duty Claim"); and (c) breach of contract (the "Contract Claim") (collectively, the "State Court Claims"). [*Id.* at pp. 4–6 of 25].

26. On May 25, 2016, this Court held a hearing on the Plaintiff's request for preliminary injunction (previously defined as the TI Hearing). At the TI Hearing, three witnesses testified: the Plaintiff, Krasoff, and Tauch.

27. On June 14, 2016, this Court held a hearing to issue its ruling orally on the record. The Court made oral findings of fact and conclusions of law, and granted the temporary injunction. This Memorandum Opinion memorializes this ruling.[5]

---

[5] When this Court issued its oral ruling on June 14, 2016, it instructed the Plaintiff to add Krasoff as a party-plaintiff. Accordingly, on June 21, 2016, the Plaintiff filed a motion for leave to amend the Complaint to add Krasoff as a party-plaintiff. [Adv. Doc. No. 21]. The Court has entered an order granting this motion. [Adv. Doc. No. 25]. This Memorandum Opinion does not discuss this particular issue. This Court, *sua sponte*, raised the issue of adding Krasoff as a party, which this Court is allowed to do. *Republic of Philippines v. Pimental*, 553 U.S. 851, 861 (2008) ("A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join."); *R–Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007) ("The inquiry contemplated by Rule 19(a) is a practical one, and is addressed to the sound discretion of the court.") (citation omitted). There is no question that this Court has the power under Fed. R. Civ. P. 19, as made applicable by Bankruptcy Rule 7019, to require Krasoff to be a party-plaintiff in this adversary proceeding. Given the facts in this dispute—where the Plaintiff (Krasoff's wife) is suing to enjoin KRD from continuing to sue her husband in the State

### III. Credibility of Witnesses

Three witnesses testified at the TI Hearing: (1) Angel, (2) Krasoff, and (3) Tauch. The Court finds that the testimony of Angel and Krasoff was very credible and gives substantial weight to their testimony.

The Court finds that Tauch is less credible, and the Court is particularly concerned about his credibility when he swears under oath in the Debtor's SOFA that the MOU was "never consummated," but then subsequently (using KRD as the vehicle) sues Krasoff for breach of contract (citing the MOU as the contract) and, additionally, testifies at the TI Hearing that Krasoff breached the terms of the MOU. [Hr'g Tr. 71:12–23, May 25, 2016].

The Court also finds Tauch's credibility to be questionable on another point. Tauch signed the Debtor's Schedules under oath, and represented that the Debtor had no stock in any entities. In Schedule B, Item No. 13 requires disclosure of any stock and interests in incorporated or unincorporated businesses that the Debtor owns. In responding to this inquiry, Tauch, on behalf of the Debtor, represented that there were "none." [Plaintiff's Ex. No. 5, p. 5 of 47]. Yet, at the TI Hearing, Tauch testified under oath that KRD remitted funds to both the Debtor and its subsidiaries. [Hr'g Tr. 74:3–15, May 25, 2016]. Thus, Tauch, when signing the Debtor's Schedules, represented under oath that the Debtor had no subsidiaries, but is now representing under oath that the Debtor does have subsidiaries. This glaring contradiction undermines his credibility.

In sum, the Court finds Tauch to be less credible than Angel and Krasoff and therefore gives his testimony less weight.

---

Court Suit—Krasoff should be a party-plaintiff in this adversary proceeding, and Fed. R. Civ. P. 19 allows this Court to require him to be a plaintiff. *Sachs Elec. Co. v. Bridge Info. Sys.*, 288 B.R. 548, 555–56 (E.D. Mo. 2001) ("Rule 19(a) requires that any necessary party be joined in the action if such joinder does not deprive the court of subject matter jurisdiction over the action and the absent party is subject to service of process.").

## IV. Conclusions of Law

### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Judgment

1. Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts. Thus, the threshold question is whether the dispute at bar "arises under," "arises in," or is "related to" the Debtor's Chapter 7 case. Ample case law indicates that it does.

The Defendants assert that this Court has no jurisdiction over the pending dispute. [Adv. Doc. No. 14, pp. 10–11 of 17]. This Court disagrees for the reasons set forth below.

*In re Christ Hosp.*, 502 B.R. 158 (Bankr. D.N.J. 2013), is factually analogous to the dispute at bar and illustrates why this Court has jurisdiction over the dispute at bar. In *Christ Hospital*, an open bid auction was held wherein Hudson[6] was the successful bidder for essentially all of the debtor's assets. *Id.* at 161. However, following the auction, Prime Healthcare Services, Inc. (Prime) initiated a lawsuit against Hudson in state court and asserted claims relating to Hudson's acquisition of hospital assets. *Id.* In response, Hudson filed a motion in the bankruptcy court for an injunction against Prime, arguing that the sale order was being collaterally attacked and violated by Prime's pursuit in the state lawsuit. *See id.* at 161–62.

---

[6] "Hudson" includes three entities and one major stakeholder in the Hudson entities: Hudson Hospital Propco, LLC, Hudson Hospital Opco, LLC, Hudson Hospital Holdco, LLC and Vivek Garipalli.

The bankruptcy court granted Hudson's motion for an injunction on the grounds that: (1) Prime's "economic tort claims are purported obligations of Hudson which 'are connected to or arise from' the § 363 sale of [free and clear] assets;" (2) Prime failed to object to the auction even though it had complete notice and knowledge of the terms of the § 363 sale; (3) Prime collaterally attacked the sale order, later reaffirmed by the confirmation order, by filing its state court lawsuit, and the sale order specifically enjoins collateral attacks on the sale of the assets; (4) Prime's collateral attack on the sale order is an attack on the economic integrity of the § 363 sale and it directly attacks the "good faith" finding of the sale order; (5) the bankruptcy court's "jurisdiction to interpret and enforce its sale and confirmation orders is historic and unimpeded by *Stern v. Marshall* . . . [m]oreover, the *in rem* aspect of § 363(b) sales remains unaltered by currently debated jurisdiction issues;" and (6) the bankruptcy court was authorized to issue an injunction, as the injunction would be in aid of preexisting injunctions embodied in the sale approval order and the confirmation order, no Anti-Injunction Act restrictions applied in the case, and the All Writs Act and § 105(a) enabled the injunctive process. *Id.* at 185–86. The bankruptcy court further explained that:

> This matter is "core," emanating from 28 U.S.C. § 157(b)(2)(L) and (N), now presented as a motion to enforce terms of the § 363 Sale Approval Order and the Confirmation Order. This matter "arises under title 11" (§ 363 and the statutory confirmation process), and "arises in" a case under title 11 (that is, the collateral attack on this court's orders undertaken during the pendency of this Chapter 11 case).

*Id.* at 180 n.25.

Prime appealed the bankruptcy court's ruling and, on appeal, argued that the bankruptcy court did not have jurisdiction to enjoin its state law claims because: (1) the state law claims were not "core" claims under 28 U.S.C. § 157; (2) the bankruptcy court's jurisdiction could not stem from 28 U.S.C. § 1334(b); (3) the state law claims were not "related to" the debtor's

bankruptcy; and (4) the bankruptcy court failed to set forth the basis for its proper exercise of jurisdiction. *In re Christ Hosp.*, No. 14–472 (ES), 2014 WL 4613316, at *5 (D.N.J. Sept. 12, 2014). For its part, Hudson contended that its injunction motion was a "core" matter because it sought to enforce the sale order and the confirmation order and the bankruptcy court had jurisdiction to enforce its own orders. *Id.* at *6. Hudson further argued that "[*Stern v. Marshall*, 131 S. Ct. 2594 (2011)], is inapposite because . . . the Bankruptcy Court did not enter a judgment with respect to any state law claim[; i]t simply enjoined Prime from litigating a state law claim which is barred by two Bankruptcy Court Orders." *Id.* (internal quotation marks and citations omitted).

Citing 28 U.S.C. § 157(b)(2)(N), the district court noted that "core" matters include but are not limited to "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." *Id.* at *7. Thus, the district court held that the bankruptcy court had "statutory jurisdiction to enforce its own orders . . . [and that] Hudson's injunction motion was a 'core' matter under the plain language of the Bankruptcy Code." *Id.* Furthermore, citing the *Stern* opinion, the district court concluded that *Stern*'s holding did not disturb the bankruptcy court's jurisdiction. *Id.* Indeed, the district court concluded that "[the bankruptcy court] properly held that its jurisdiction to interpret and enforce its sale order . . . is historic and unimpeded by *Stern v. Marshall* or other recent developments in the law." *Id.* (internal citations and quotations omitted). The district court affirmed the bankruptcy court's decision and concluded that the bankruptcy court had properly exercised its jurisdiction in issuing the injunction. *Id.* at *5–6.

Other courts—including the Supreme Court—have also held that a bankruptcy court maintains jurisdiction to interpret and enforce its own prior orders, and that a court's

enforcement of its prior order is a "core" matter. *See, e.g., Travelers Indem. Co. v. Bailey*, 557
U.S. 137, 151 (2009) (holding that "the Bankruptcy Court plainly had jurisdiction to interpret
and enforce its own prior orders"); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail,
Inc.)*, 304 F.3d 223, 229–30 (2d Cir. 2002) (concluding that core jurisdiction exists in a dispute
between non-debtors over interpretation of the bankruptcy court's sale order); *In re Marcus
Hook Dev. Park, Inc.*, 943 F.2d 261, 266–67 (3d Cir. 1991) (holding that a motion to enforce
bankruptcy sale order is a core proceeding, and citing 11 U.S.C. § 105(a) as the "section which
gives the bankruptcy court the 'power and the jurisdiction to enforce its valid orders' "); *In re
Motors Liquidation Co.*, 513 B.R. 467, 477 (Bankr. S.D.N.Y. 2014) ("And it need hardly be said
that I [i.e., the bankruptcy court] have jurisdiction to interpret and enforce my own orders, just as
I've previously done, repeatedly, with respect to the very Sale Order here.") (internal citations
omitted); *Galaz v. Katona*, No. 5:14-CV-967, 2015 WL 5565266, at *4 (W.D. Tex. Sept. 21,
2015) ("[I]t is well established that a bankruptcy court has jurisdiction to interpret and enforce its
own prior orders."). Indeed, federal courts need no independent basis of jurisdiction to enter an
injunction in support or construction of their own prior orders. *Local Loan Co. v. Hunt*, 292 U.S.
234, 239 (1934); *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.*, 3 F.3d 877, 881 (5th Cir.
1993), *cert. denied,* 511 U.S. 1032 (1994).

 This Court finds that the reasoning in *Christ Hospital* and the holdings in the above-
referenced cases leave no doubt that this Court has jurisdiction over the dispute at bar. Indeed,
the facts in *Christ Hospital* are quite similar to the facts presented in the dispute at bar—namely,
the Plaintiff here requests that this Court interpret and enforce a court order (i.e., the Sale Order).
As stated above, this Court issued the Sale Order on April 22, 2015. [Finding of Fact No. 19].
Pursuant to this Sale Order, the Court held an auction on May 20, 2015 during which the Trustee

sold the Sale Order Claims to the highest bidder (i.e., the Plaintiff), [Findings of Fact Nos. 19 & 20]; and thereafter, the Trustee executed a Bill of Sale evidencing such sale, [Finding of Fact No. 21].  However, despite the properly-held auction and KRD's active participation in this auction, KRD nevertheless initiated the State Court Suit, asserting the State Court Claims that require both the interpretation and enforcement of the Sale Order.  Moreover, the State Court Claims are "irreversibly intertwined with" the enforcement of the Sale Order.  *In re New Century TRS Holdings, Inc.*, 544 F. App'x 70, 73 (3d Cir. 2013).

Additionally, as the district court in *Christ Hospital* made clear, "core" matters include "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." 2014 WL 4613316 at *7 (citing 28 U.S.C. § 157(b)(2)(N)).  Here, there is no question that the Sale Order constitutes an "order approving the sale of property [i.e., the Sale Order Claims]," and there is also no question that KRD has filed a proof of claim in this case, [Finding of Fact No. 22].  Therefore, the dispute relating to the State Court Claims is a "core" matter.[7]

In sum, this Court has jurisdiction over this adversary proceeding because it involves the interpretation and the enforcement of an order issued by this Court; namely, the Sale Order. *Travelers Indem. Co.*, 557 U.S. at 151; *see also White v. Kubotek Corp.*, 487 B.R. 1, 7 (D. Mass. 2012) ("The Bankruptcy Court had statutory authority to rule because interpreting and enforcing an order resulting from a prior 'core proceeding' also constitutes a 'core proceeding.' "); *In re Texaco, Inc.*, 182 B.R. 937, 943–44 (Bankr. S.D.N.Y. 1995) (bankruptcy court's interpretation and enforcement of a previous order is a "core" proceeding).

---

[7] Tauch is not a named party in the State Court Suit, and arguably does not need to be a defendant in this adversary proceeding, as he is the sole owner of KRD, and any injunction against KRD would also apply to Tauch. Fed. R. Civ. P. 65(d)(2), which is made applicable by Bankruptcy Rule 7065.

14

2. <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1409(a) because the main case was properly filed in the Southern District of Texas under 28 U.S.C. § 1408(1); and any adversary proceeding may be commenced in the district in which the main case is pending.

3. <u>Constitutional Authority to Enter a Final Judgment</u>

At this point of the adversary proceeding, the Plaintiff does not seek a final order. Rather, the Plaintiff seeks a preliminary injunction—which is not a final order. *See In re CEI Roofing, Inc.*, 315 B.R. 61, 67–68 (Bankr. N.D. Tex. 2004) ("SAI simply seeks to enjoin, during the pendency of this adversary proceeding, the conduct that it believes is detrimentally affecting its ability to reorganize. Since SAI requests only a **preliminary injunction—not a final order or final judgment**—this Court is empowered to grant it under *Celotex*.") (emphasis in original). Accordingly, because the Plaintiff is not at this point requesting the undersigned judge to sign and enter a final judgment or a permanent injunction, the concern articulated in *Stern* is not present.  Moreover, even if this Court was issuing a permanent injunction after a trial on the merits—i.e., a final order—the district court in *Christ Hospital* concluded that *Stern* does not bar a bankruptcy court from issuing a final order that interprets and enforces a prior order that it has issued. *Christ Hospital*, 2014 WL 4613316 at *6.  The Court finds this reasoning persuasive and adopts it.

**B. Interpreting and Enforcing the Sale Order Requires a Determination as to Whether the State Court Claims are Derivative or Direct**

In the State Court Suit, KRD asserts claims against Krasoff for various actions that Krasoff allegedly took prior to the Petition Date.[8]   Indeed, because of Krasoff's alleged skullduggery, Tauch replaced him as the managing member of the Debtor more than two years before the Petition Date.  [*See* Finding of Fact No. 6].  In the State Court Suit, not only does KRD assert that Krasoff's actions violated his fiduciary duty to the Debtor, but KRD also asserts that his actions violated a fiduciary duty and a contractual duty that Krasoff owed to KRD; and that therefore KRD has claims against Krasoff over and above any claims that the Debtor may have against him.

The Plaintiff contends that any claims that exist due to Krasoff's alleged misbehavior were solely claims belonging to the Debtor as of the Petition Date.  And, because they are solely claims of the Debtor, the Plaintiff contends that it purchased these claims at the auction pursuant to the Sale Order.  [*See* Findings of Fact Nos. 19 & 20].  The Plaintiff points to the language in the Sale Order stating that an auction would be held so that the Trustee could sell "any and all claims and causes of action against pre-petition officers, directors, and or managers of Chiron Equities, LLC." [Finding of Fact No. 19].  Thus, the Plaintiff contends that KRD, by prosecuting the State Court Suit, has stolen the claims purchased by the Plaintiff and is therefore violating the Sale Order.  Hence, the Plaintiff is requesting a temporary injunction to stop the Defendants from continuing to prosecute the State Court Suit.

---

[8] For purposes of this Court's analysis, the Court assumes that KRD's allegations in the State Court Suit against Krasoff are true. The Court wants to emphasize, however, that it is not making any findings that Krasoff in fact committed the bad acts alleged by KRD.

The resolution of the dispute largely turns on the question of whether the State Court Claims are derivative or direct. If any of the State Court Claims are derivative, then they comprise part of the Sale Order Claims that the Plaintiff purchased from the Trustee. [*See id.*]. This is so because any derivative claims that the Debtor had against Krasoff already existed on the Petition Date,[9] which means that these claims were property of the Debtor's estate that only the Trustee could prosecute—and therefore sell to third parties (such as the Plaintiff). *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274–77 (5th Cir. 1983) (holding that claims harming the debtor corporation that arose from pre-petition conduct become property of the estate under 11 U.S.C. § 541(a)(1)).

Texas law is clear that "[a] cause of action for injury to the property of a corporation or for destruction of its business lies with the corporation, not a shareholder." *Great Am. Food Chain, Inc. v. Andreottola*, No. 3:14-CV-1727, 2016 WL 852962, at *3 (N.D. Tex. Mar. 4, 2016) (citing *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied)).[10] Therefore, "a shareholder may not sue directly for breaches of duties by officers and directors of a company because those injuries are actually suffered by the corporation." *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994); *see also Lewis v. Knutson*, 699 F.2d 230, 237–38 (5th Cir. 1983).

---

[9] Tauch replaced Krasoff as the managing member of the Debtor more than two years before the Petition Date. [Finding of Fact Nos. 6 & 9]. Therefore, any claims that the Debtor has against Krasoff for his stealing corporate funds accrued pre-petition and were in existence on the Petition Date.

[10] There is no question that Texas law governs whether the State Court Claims are derivative or direct claims. *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir. 1987) ("State law determines whether a shareholder may maintain a nonderivative action."); *see also In re Blanton*, 105 B.R. 811, 821 (Bankr. W.D. Tex. 1989) (holding that where the entity was incorporated in Texas, and the shareholders reside in Texas and the bankruptcy case is pending in Texas, Texas law—not Arizona law—should be applied).

The standard for determining whether a claim is derivative under Texas law was articulated by the Supreme Court of Texas in *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds as stated in Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015). Stating that "a corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong," the Supreme Court of Texas expanded on the nature of a derivative claim under Texas law, quoting a previous case of its own:

> Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distributions to the stock holders as dividends, or for such other purposes as the directors may lawfully determine.

*Wingate*, 795 S.W.2d at 719. This language leaves no doubt that if a shareholder's claim would require a demonstration of harm to the corporation in order to succeed, it is a derivative claim. *In re Skyport Glob. Commc'ns, Inc.*, 2011 WL 111427, at *25 (Bankr. S.D. Tex. Jan. 13, 2011).

Conversely, a direct claim requires the plaintiff to demonstrate personal harm suffered by the plaintiff. *See id.* at *4 ("A stockholder who is directly injured, however, does retain the right to bring an individual action for injuries affecting his or her legal rights."). Indeed, the Texas Supreme Court reiterated in *Sneed* that a "shareholder may still recover damages for wrongs done to him individually where the wrongdoer violates a duty arising from contract or otherwise,

18

and owing directly by him to the stockholder." 465 S.W.3d at 188 (citing *Wingate*, 795 S.W.2d at 719) (internal quotations omitted). "But to recover in an individual capacity for non-derivative claims, the shareholder 'must prove a personal cause of action and personal injury.' " *Id.*

Thus, the key question here is whether the State Court Claims are derivative claims which only the Debtor (and now the Plaintiff) has standing to prosecute, or instead are direct claims which only KRD has standing to pursue.

## C. KRD Lacks Standing to Prosecute the State Court Claims

There is no dispute that any causes of action that constitute derivative claims belong to the Plaintiff. In fact, counsel for the Defendants agreed with this proposition at the TI Hearing. [*See* Hr'g Tr. 8:11–9:2, May 25, 2016]. Rather, the Defendants argue that the State Court Claims are "direct claims" of KRD that are not encompassed by the claims described in the Sale Order that the Trustee sold to the Plaintiff in the Bill of Sale. [Hr'g Tr. 8:15–17, 21–24, May 25, 2016]. Indeed, in the First Amended Petition, KRD expressly asserts that the claims it is "asserting against Krasoff . . . are direct claims that, under applicable law, K Realty [KRD] possesses directly against Krasoff." [Plaintiff's Ex. No. 1, p. 3 of 25].

Of course, just because KRD says that this is so does not make it true. In order to determine whether each of the State Court Claims is a direct claim of KRD or a derivative claim of the Debtor, the Court will examine the substance of the First Amended Petition and the nature of the wrongs alleged therein, and also draw on testimony from the TI Hearing.

### 1. The Fiduciary Duty Claim

In one cause of action against Krasoff, KRD argues that Krasoff "violated the fiduciary duties he owed directly to [KRD] as a fellow member of the [Debtor] and as a holder of a super

19

majority of the membership interests in the [Debtor]." [*Id.* at p. 5 of 25]. Indeed, KRD asserts that it "justifiably expected Krasoff to act in the best interest of KRD and the best interest of the [Debtor]. [*Id.*]. While KRD also asserts that Krasoff breached his fiduciary duty to the Debtor, its Fiduciary Duty Claim against Krasoff is being prosecuted on behalf of KRD itself, not on behalf of the Debtor. [*Id.*]. Therefore, KRD argues that the Fiduciary Duty Claim is a personal, direct claim against Krasoff, not a derivative claim on behalf of the Debtor.

This Court disagrees for three reasons. First, numerous Texas courts have held that "a co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder." *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing *Kaspar v. Thorne*, 755 S.W.2d 151, 155 (Tex. App.—Dallas 1988, no writ) ("[A] co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder."); *Schoellkopf v. Pledger*, 739 S.W.2d 914, 920 (Tex. App.—Dallas 1987), *rev'd on other grounds*, 762 S.W.2d 145 (Tex. 1988) ("Although such a fiduciary duty may exist in some instances, we are unwilling to apply it as a matter of law to all shareholders of closely held corporations . . . The relationship between stockholders of a corporation is not always a fiduciary one."); *Hadj v. Soussan*, No. 01-98-01017-CV, 2001 WL 301430, at *3 (Tex. App.—Houston [1st Dist.] Mar. 29, 2001, no pet.) ("A corporate officer's fiduciary duty runs only to the corporation, not to individual shareholders."). These opinions therefore appear to slam the door on any notion that a fiduciary duty exists between KRD and Krasoff.

Second, the Fifth Circuit, applying Texas law, has made it clear that a cause of action for an officer's or director's breach of a fiduciary duty owed to the corporation belongs to the corporation, and not to individual shareholders. Noting first that "the fiduciary obligations of

corporate officers are often identical to those of directors," the Fifth Circuit held that "a cause of action for breach of directors' fiduciary duties belongs to the corporation and cannot be brought by a stockholder in his own right, nor can the shareholder directly prosecute the suit in the name of the corporation." *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 721–22 (5th Cir. 1984). Thus, *Gearhart* bars KRD from suing Krasoff for breach of fiduciary duty.

Third, at least one district court within the Fifth Circuit, applying Texas law and citing *Gearhart*, has held that "[o]fficers and directors owe fiduciary duties only to the corporation." *Schautteet v. Chester State Bank*, 707 F.Supp. 885, 888 (E.D. Tex. 1988). This district court concluded that a minority shareholder could have a direct claim against a majority shareholder, but only for "malicious suppression of dividends" or for "wrongfully obtaining a premium for selling control of a corporation." *Id.* In the suit at bar, however, KRD is not suing Krasoff for either of these types of claims. Rather, KRD is the *majority* shareholder of the Debtor, so it could hardly have a claim against Krasoff for malicious suppression of dividends or wrongfully obtaining a premium for selling control of the Debtor.

While Krasoff owed no fiduciary duty to KRD, he, as an officer of the Debtor, did definitely owed a fiduciary duty to the Debtor. *Stubblefield v. Belco Mfg., Co., Inc.*, 931 S.W.2d 54, 55 (Tex. App.—Austin 1996, no writ). Indeed, KRD, in the State Court Suit, concedes that Krasoff owed a fiduciary duty to the Debtor. [Plaintiff's Ex. No. 1, p. 5 of 24]. Hence, if Krasoff violated this fiduciary duty, the law is clear that: (1) only the Debtor, not KRD, had a claim against Krasoff; (2) as of the Petition Date, the Fiduciary Duty Claim became property of the estate, *MortgageAmerica*, 714 F.2d at 1274–77; (3) only the Debtor (on behalf of the estate) could bring this claim; and (4) only the Trustee (who, upon his appointment, took title to assets of the estate) can sell it to a third party, such as the Plaintiff. *Cadle Co. v. Mims (In re Moore)*,

21

608 F.3d 253, 258 (5th Cir. 2010) ("A trustee may sell litigation claims that belong to the estate, as it can other estate property, pursuant to 363(b).").

The testimony at the TI Hearing was that KRD's funds were deposited into the Debtor's account,[11] [Finding of Fact No. 8]; and therefore, any looting of these funds by Krasoff is a misuse of the Debtor's property, not KRD's property. Stated differently, once KRD's funds were deposited into the Debtor's account and Krasoff diverted the monies intended to fund the Debtor's operations—as KRD alleges—Krasoff violated his fiduciary duty to the Debtor, and the injury or harm that resulted from such misuse was suffered by the Debtor, not KRD, because the monies belonged to the Debtor. *See Waghalter v. U.S.*, No. 76-H-1355, No. 76-H-1722, 1979 WL 1498, at *5 (S.D. Tex. Oct. 23, 1979) ("When the responsible person deposits personal funds into the corporate account, his funds become corporate funds . . . ."); *U.S. v. Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents in United States Currency, More or Less, Seized from LaOstriches & Sons, Inc., Defendant-in-rem*, 2015 WL 630291, at *4 (E.D. Mo. Feb. 13, 2015) [hereinafter *Eleven Million*] (holding that the funds in the privately-held corporation's account belonged to the corporation, not to the individuals who owned the corporation, and expressly stating that "[d]irectors, officers and shareholders of a corporation do not have standing to claim an ownership interest in corporate property in their individual capacities; they must state a claim in the corporate name"). It may well be that Krasoff's embezzlement of these funds harmed KRD insofar as the value of KRD's interest in

---

[11] At the TI Hearing, Tauch testified that the funds siphoned off by Krasoff were monies on deposit in not only the account of the Debtor, but also the funds on deposit in the accounts of subsidiaries of the Debtor. [Hr'g Tr. 74:3–9; 80:24–81:8; 82:4–7, May 25, 2016]. However, Tauch signed the Debtor's Schedule B under oath representing that the schedules were true and correct. In Schedule B, Item No. 13 requires disclosure of any stock and interests in incorporated or unincorporated businesses that the Debtor owns. In responding to this inquiry, Tauch, on behalf of the Debtor, represented that there were "none." [Plaintiff's Ex. No. 5, p. 5 of 47]. Accordingly, due to Tauch's judicial admission, this Court finds that the Debtor had no subsidiaries, and that therefore any funds that KRD deposited went into the Debtor's account, and that any funds diverted by Krasoff came from the Debtor's account.

the Debtor declined. But, Texas law instructs this Court that if a shareholder's claim would require a demonstration of harm to the corporation (here, the Debtor) in order to succeed, then such a claim is a derivative claim. *See Wingate*, 795 S.W.2d at 719.

Accordingly, the Fiduciary Duty Claim against Krasoff is a derivative claim, and as such, it was one of the claims that comprised the Sale Order Claims that the Trustee conveyed to the Plaintiff. [*See* Findings of Fact Nos. 19 & 20]. Therefore, the Plaintiff owns the Fiduciary Duty Claim, and KRD has no standing to prosecute this claim in the State Court Suit.

2. The Fraud Claim

In the First Amended Petition, KRD asserts that "Krasoff induced [KRD] to invest funds intended for the [Debtor] by misrepresenting to [KRD] that he would not incur expenses nor pay himself, transfer to himself, or remit money given to him by [KRD] to fund the [Debtor's] operations." [Plaintiff's Ex. No. 1, p. 4 of 25]. Additionally, KRD contends that "Krasoff concealed or failed to disclose material facts within his knowledge that Krasoff had a duty to disclose to [KRD]." [*Id.*]. As a result of Krasoff's alleged misrepresentation and concealment, KRD asserts it suffered substantial injury. [*Id.*]. KRD seeks actual damages as well as punitive damages. The Court will consider these two assertions collectively as the "Fraud Claim."

The Court concludes that the Fraud Claim asserted by KRD in the State Court Suit is a derivative claim. Testimony at the TI Hearing revealed that prior to the Petition Date, Tauch, on behalf of KRD, deposited substantial funds into the accounts of the Debtor. [Finding of Fact No. 8]. Assuming that after KRD deposited these funds into the Debtor's account, Krasoff did in fact withdraw funds from the Debtor's account for his own personal use, such actions resulted in harm to the Debtor. *See Fid. & Deposit Co. of Md. v. Usaform Hail Pool, Inc.*, 463 F.2d 4, 7 (5th Cir. 1972) ("It goes without saying that any funds diverted to the personal use of the

23

employees, to other corporations without legal claims, or for any purpose at all that was not for a legitimate corporation purpose would represent a loss to the corporation . . . ."). This is because once KRD's monies were deposited into the Debtor's account, these funds belonged to the Debtor, and any funds thereafter diverted by Krasoff from the Debtor's account constituted an injury to the Debtor, not KRD. *See Waghalter*, 1979 WL 1498 at *5; *Eleven Million*, 2015 WL 630291 at *4. The fact that Krasoff may have lied to KRD (by lying to Tauch), or tricked KRD into transferring KRD's funds into the Debtor's account, or failed to disclose to KRD his embezzlement of the Debtor's funds, does not somehow give KRD a direct cause of action against Krasoff. As already noted above, Krasoff had no duty to KRD, *Schautteet*, 707 F.Supp. at 888; *Hoggett*, 971 S.W.2d at 488; *Soussan*, 2001 WL 301430 at *3; and, furthermore, contrary to KRD's position (discussed in the subsection below), there was no contract between KRD and Krasoff establishing such a duty, *see Sneed*, 465 S.W.3d at 188 ("[A] shareholder may still recover damages for wrongs done to him individually where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder.").

Moreover, because Krasoff's alleged embezzlement occurred pre-petition, the claim existed on the Petition Date and therefore became property of the estate, *Matter of Seven Seas Petroleum*, 522 F.3d 575, 584 (5th Cir. 2008); *MortgageAmerica*, 714 F.2d at 1274–77, and was part of the universe of claims that the Plaintiff purchased at the auction through the Bill of Sale executed by the Trustee. [*See* Findings of Fact Nos. 19, 20 & 21]. The value of KRD's stock ownership interest in the Debtor may have declined due to the improper draining of the Debtor's cash by Krasoff, but, as set forth in *Wingate*, these circumstances do not give rise to a personal claim that KRD can prosecute; rather, they only give rise to a derivative claim of the Debtor. *See* 795 S.W.2d at 719. To reiterate, the draining of the funds may injure KRD insofar as the value

of its stock ownership declines, *but this injury to KRD cannot occur without the injury to the Debtor*—and this nexus makes it a derivative claim. *See id.* It is this derivative claim, among others, that the Trustee, after this Court held the auction pursuant to the Sale Order, conveyed to the Plaintiff through his execution of the Bill of Sale. [Finding of Fact No. 21]. In sum, because KRD's Fraud Claim belonged to the Debtor on the Petition Date, this is one of the claims sold at the auction; therefore, KRD's Fraud Claim is now owned by the Plaintiff; and KRD has no standing to prosecute the Fraud Claim.

Additionally, KRD's Fraud Claim falls under another type of claim set forth in the Sale Order that belongs to the Plaintiff. Specifically, the Sale Order includes the following claims and/or causes of action that were sold to the highest bidder (i.e., the Plaintiff) at the auction held on May 20, 2015:

> [A]ny and all other claims, debts, causes of action, rights or demands, hereafter of Chiron Equities, LLC, accrued or unaccrued, contingent or noncontingent, whether arising from contract, tort, strict liability, warranty, misrepresentation, **fraud**, negligence, or any other claim, at law or in equity, whether asserted theretofore or not, whether cognizable judicially or by any administrative or regulatory agency, at the present time or created by statute or judicial action.

[Findings of Fact Nos. 19 & 20] (emphasis added). There is little doubt that the Fraud Claim falls under the general category of "fraud" as set forth above. That is, to the extent that Krasoff defrauded the Debtor by withdrawing funds from the Debtor's account, the Debtor—not KRD— owns the cause of action. *MortgageAmerica*, 714 F.2d at 1278–79 ("[A] cause of action under the Texas corporate trust fund (denuding) theory, even though usually brought by creditors, is an action in the right of the corporation, and which is brought for the benefit of all creditors and

shareholders with an interest in the corporation.").[12] Accordingly, the Fraud Claim asserted in KRD's First Amended Petition is a derivative claim of the Debtor that the Plaintiff purchased at the auction.   The Plaintiff, and only the Plaintiff, has standing to prosecute the Fraud Claim.

### 3. The Contract Claim

KRD also sues Krasoff for breach of contract.   Specifically, KRD asserts that Krasoff violated the MOU, and that Krasoff's violation has directly harmed KRD.  [Plaintiff's Ex. No. 1, pp. 5–6 of 25].   Moreover, KRD emphasizes that the Debtor did **not** sign the MOU and, therefore, cannot possibly have a derivative claim with respect to this contract.

The Texas Supreme Court has recognized that shareholders of a privately-held corporation can enter into written agreements that constitute binding contracts:

> Of course, shareholders may also prevent and resolve common disputes by entering into a shareholders' agreement to govern their respective rights and obligations.  Importantly, the Legislature has granted corporate founders and owners broad freedom to dictate for themselves the rights, duties, and procedures that govern their relationship with each other and with the corporation. Again, we note that although RIC's owners did not enter into a shareholders' agreement, they certainly could have done so, and by doing so could have avoided the current dispute.

*Ritchie v. Rupe*, 443 S.W.3d 856, 881 (Tex. 2014).   So, there is certainly authority that one shareholder can sue another based upon a contractual commitment.

Here, however, for two separate and distinct reasons, KRD cannot use the MOU as a basis to sue Krasoff for breach of contract.

---

[12] As already noted previously, according to the testimony at the TI Hearing, KRD deposited the funds into the Debtor's account, and once this deposit occurred, the funds became property of the Debtor, *see Waghalter*, 1979 WL 1498 at *5; *Eleven Million*, 2015 WL 630291 at *4; therefore, any diversion of these funds by Krasoff, as an officer of the Debtor, constituted harm to the Debtor, not to KRD.

*a. Doctrine of Judicial Admission*

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). A judicial admission "has the effect of withdrawing a fact from contention." *Id.* For the doctrine of judicial admission to apply, the purported admission "must be made intentionally as a waiver, releasing the opponent from proof of fact." *Id.* (citation omitted). Moreover, whether to treat prior "statements in briefs as binding judicial admissions of fact . . . is within [the Court's] discretion." *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990).

In the SOFA signed by Tauch under oath and filed in the Debtor's main bankruptcy case, Tauch expressly represented, not only once, but twice, that the MOU was "never consummated." [Finding of Fact No. 16]. The Court construes Tauch's representation to be that the MOU was never finalized—i.e., never took effect. And, because the MOU never took effect, it is not an enforceable contract upon which suit can be brought. *See Cantu v. Jackson Nat'l Life Ins., Co.*, 579 F.3d 434, 440 (5th Cir. 2009) (holding that no binding insurance contract "took effect" because the initial premium was not paid); *Romero v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 6600, at *9 (Kan. 2015) ("If a condition precedent does not occur or is not performed, the contract does not take effect and is unenforceable."). The Court finds that KRD (by virtue of its sole owner's judicial admission in the SOFA) is prohibited from asserting the Contract Claim because by Tauch's own sworn admission, there is, in fact, no valid contract in existence upon which KRD can sue. *See, e.g., Larson v. Gross Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 1996) (court grants summary judgment against the plaintiff/debtor in his lawsuit against the bank by

27

holding that he cannot prove damages because he made a judicial admission in his schedules that the claim had no value).

### b. The Debtor is a Third-Party Beneficiary to the MOU

Alternatively, even assuming that the MOU constitutes an enforceable contract, KRD still does not have its own direct claim against Krasoff on the ground of breach of contract.

First, the Debtor was a third-party beneficiary to the MOU and suffered harm from Krasoff's breach of this contract. "A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (internal citations omitted). "To demonstrate that it is a third-party beneficiary to a contract, a party must prove that it is either a donee or creditor beneficiary of the contract, and not someone who is benefitted only incidentally by performance of the contract." *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 592 (S.D. Tex. 2015). The Supreme Court of Texas defines what constitutes a "donee beneficiary" and a "creditor beneficiary":

> One is a donee beneficiary if the performance promised will, when rendered, come to [it] as a pure donation. If on the other hand, that performance will come to [it] in satisfaction of a legal duty owed to [it] by the promise, [it] is a creditor beneficiary . . . this duty may be an "indebtedness, contractual obligation or other legally enforceable commitment" owed to the third party.

*MCI Telecomms.*, 995 S.W.2d at 651 (internal citations omitted).

In the adversary proceeding at bar, although the Debtor was not a signatory to the MOU, the very purposes of the MOU were to "establish operating guidelines" and to "clarify ownership rights in [*the Debtor*]." [Finding of Fact No. 7] (emphasis added). Specifically, the signing parties agreed that, "with respect to [*the Debtor*] and its affiliated companies," the parties shall

28

"never remit, expend or transfer funds in any form, incur debt, or divert income away from" the Debtor and its affiliated companies. [*Id.*] (emphasis added). Stated differently, the signing parties owed to the Debtor a contractual obligation, or at least a legally enforceable commitment. Thus, the Debtor was a creditor beneficiary of the MOU. Therefore, by diverting the monies from the Debtor, Krasoff, a signing party of the MOU, breached his contractual obligations owed to the Debtor.

Moreover, the benefit from the signing parties' commitment under the MOU went directly to the Debtor. Given the purposes of the MOU, one of which was to "establish operating guidelines" of the Debtor, and the other of which was to prohibit the looting of the Debtor, the benefits received by the Debtor were hardly incidental. Rather, such benefits resulted precisely from the agreement signed by the parties, in their capacities as shareholders of the Debtor, to set forth corporate governance issues and to maximize the Debtor's value. Therefore, the Court concludes that the Debtor was a third-party beneficiary to the MOU, and it suffered harm from Krasoff's breach of contract—i.e., from Krasoff's draining the Debtor's account and using these funds to pay for his own personal expenses.

Given these circumstances, for KRD to show that the Contract Claim is a direct claim—as opposed to a derivative one—KRD must prove that (1) it has a personal cause of action, and (2) it suffered a personal injury. *See Sneed*, 465 S.W.3d at 188 (citing *Wingate*, 795 S.W.2d at 719) (internal quotations omitted).

As to the first element, in determining whether a cause of action belongs to the corporation or to the shareholder, courts look to the rights and obligations that exist between the parties. *Mason v. Fed. Deposit Ins. Corp.*, 888 F.Supp. 799, 804 (S.D. Tex. 1995). If a shareholder/plaintiff can establish that the defendant owed it a duty that was separate and apart

from the duty it owed to the corporation, an individual action may be maintained. *Id.* (internal citation omitted). For example, in *Empire Life Ins. Co. v. Valdak Corp.*, 468 F.2d 330, 332 (5th Cir. 1972), a shareholder pledged his stock as security for a loan under a written security agreement and then sought to recover damages for the diminution in the value of his stock. The Fifth Circuit distinguished the role of a pledger from the role of a shareholder, holding that the shareholder had a separate cause of action as a pledger despite the fact that he would also have a derivative cause of action as a shareholder. *Id.* at 336.

This is not the case here. In the adversary proceeding at bar, the only written agreement on record between KRD and Krasoff was the MOU, which was signed by the two parties in their capacities as shareholders of the Debtor. [Findings of Fact Nos. 4 & 7]. The MOU did not demonstrate any other relationship between KRD and Krasoff aside from their corporate relationship in the Debtor. Under the MOU, Krasoff simply did not make any personal commitment to KRD. KRD fails to show that Krasoff owed it a duty that is *separate and apart* from the duty Krasoff owed to the Debtor.

The second element—personal injury—is also lacking here. KRD makes no effort to distinguish between the damages it asserted under the Contract Claim and the damages it asserted under the Fiduciary Duty Claim or the Fraud Claim. In fact, the Court finds it impossible to segregate the damages. As this Court has already noted, once KRD's monies were deposited into the Debtor's account, these funds belonged to the Debtor. *See Waghalter*, 1979 WL 1498 at *5; *Eleven Million*, 2015 WL 630291 at *4. Any funds thereafter diverted by Krasoff from the Debtor's account constituted an injury to the Debtor, not KRD. And, as already noted, to the extent that the value of KRD's stock interest in the Debtor declined due to Krasoff's embezzlement, this harm could only occur because the Debtor itself was harmed—and these

circumstances constitute the very basis of a derivative claim, not a direct claim. *Wingate*, 795 S.W.2d at 719; *Skyport Glob.*, 2011 WL 111427 at *25. Stated differently, even if KRD's stock value declined, it was due to harm done to the Debtor—and these circumstances are the quintessential elements that constitute a derivative claim. *Skyport Glob.*, 2011 WL 111427 at *25.

In sum, KRD fails to prove that it has a "personal cause of action and personal injury" arising from Krasoff's breach of the MOU. *Sneed*, 465 S.W.3d at 188 (citing *Wingate*, 795 S.W.2d at 719) (internal quotations omitted). Accordingly, even assuming that the MOU constitutes an enforceable contract, the Contract Claim is a derivative claim of the Debtor that the Plaintiff purchased at the auction. KRD therefore does not have standing to prosecute the Contract Claim.

**D. This Court's Authority to Enjoin the Defendants from Prosecuting the State Court Claims Is Derived From 28 U.S.C. § 2283 and 11 U.S.C. § 105**

In its answer to the Plaintiff's complaint, KRD asserts that the Anti-Injunction Act prohibits this Court from enjoining the State Court Suit. [Adv. Doc. No. 14, p. 11 of 17]. Without further explanation, KRD states that "[a]lthough[] there are limited exceptions to this rule, none apply here." [*Id.*].

The Court first notes that the Anti-Injunction Act, codified as 28 U.S.C. § 2283, generally prohibits federal courts from enjoining state court proceedings, except in three situations. Section 2283 states that:

> A court of the United States may not grant an injunction to stay proceedings in a State court *except* as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (emphasis added). In the dispute at bar, at least two of these exceptions exist. First, the Code, enacted by Congress in 1978, contains an express provision—§ 105(a)—authorizing this Court to issue an injunction. Second, this Court previously issued the Sale Order, and the Court has the power under 28 U.S.C. § 2283 to enjoin the Defendants from now taking any action or pursuing any strategy that undermines this particular order.

It has been well-established that bankruptcy courts have equitable powers to issue a stay of a proceeding in a state court pursuant to § 105 of the Code. *See* 11 U.S.C. § 105(a); *Matter of Schwamb*, 169 B.R. 601, 605 (E.D. La. 1994), *aff'd*, No. 94–30427, 48 F.3d 530, 1995 U.S. App. LEXIS 4456 (5th Cir. 1995). Section 105(a) provides, in relevant part, that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Supreme Court has held that § 105(a) grants bankruptcy judges "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.' " *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (quoting § 105(a)). Moreover, the Fifth Circuit has held that § 105(a) is to be "interpret[ed] liberally," so long as any action taken pursuant to § 105(a) is "consistent with the rest of the Bankruptcy Code." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995). Indeed, § 105(a) permits bankruptcy courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code." *Perkins Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478 (5th Cir. 1994) (quoting *Chiasson v. Bingler (In re Oxford Mgmt. Inc.),* 4 F.3d 1329, 1333 (5th Cir. 1993)). Thus, when reading the Anti-Injunction Act in conjunction with § 105(a) of the Code, this Court is provided with ample authority to enjoin the Defendants from prosecuting causes of actions that belong to

the Plaintiff by virtue of this Court's Sale Order.  In fact, for this Court *not* to use its § 105

powers to enjoin the Defendants from prosecuting the State Court Suit would be to allow a

collateral attack of the Sale Order.  This, the Court will not do.

Moreover, the "protect or effectuate its judgments" exception of the Anti-Injunction

Act—also known as the "relitigation exception"—leads this Court to conclude that an injunction

would serve "to protect [and] effectuate [this Court's] judgment" in approving the Trustee's

assignment of the Sale Order Claims to the Plaintiff.  *See Southmark Props. v. Charles House*

*Corp.*, 742 F.2d 862, 873 (5th Cir. 1984); *Jacksonville Blow Pipe Co. v. Reconstruction Fin.*

*Corp.*, 244 F.2d 394, 397 (5th Cir. 1957).  Specifically, the Fifth Circuit has stated that "[t]he

relitigation exception prevents state litigation of an issue that was previously presented to and

decided by the federal court. It is founded in the well-recognized concepts of res judicata and

collateral estoppel."  *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment Inc.*, 434

F.3d 320, 323 (5th Cir. 2005) (internal quotations omitted).  Indeed, the relitigation exception is

essentially a concept designed to prevent issues that have been tried in federal court from being

relitigated in state court.  *Woods Expl. & Prod. Co., Inc. v. Aluminum Co. of Am.*, 438 F.2d 1286,

1312 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047 (1972).  And, there is good reason to prevent a

"relitigation" of claims and/or issues, as the First Circuit has aptly observed:

> [W]hat is sought is a relitigation injunction. The justification for the
> injunction here is not effect on the debtor (although the presence of
> such an effect certainly strengthens the case for the injunction), *but*
> *protection of a federal judgment. A valid original judgment provides*
> *the federal court with the power to issue the religitation injunction.*

*In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (citations omitted) (emphasis added).

Here, pursuant to an order of this Court (i.e., the Sale Order), this Court held an auction

on May 20, 2015, at approximately 1:30 P.M., during which both the Plaintiff and Tauch (as a

representative of KRD) actively participated at this auction. [Finding of Fact No. 20]. The decision to approve the sale of the Sale Order Claims to the Plaintiff was simple: the Plaintiff outbid KRD for the purchase of the assets (which included the Sale Order Claims). *[See id.]*. Indeed, the Plaintiff offered the highest bid of $31,500.00, and thereafter paid the Trustee cold, hard cash in this amount in exchange for an assignment of the Sale Order Claims. *[Id.]*. The Sale Order was never appealed. [Finding of Fact No. 19]. KRD now attempts to prosecute causes of actions in the State Court Suit that are encompassed in the Sale Order Claims sold to the Plaintiff; and to allow such tactics would undermine this Court's jurisdiction over the enforcement of its own order approving the sale of these claims to the Plaintiff.

In sum, based on 28 U.S.C. § 2283, its power under § 105(a), and applicable case law applying these statutes, this Court, contrary to the Defendants' assertion, does indeed have the authority to enjoin the Defendants from continuing to prosecute the State Court Suit as it relates to the Sale Order Claims that the Plaintiff purchased from the Trustee in the main bankruptcy case after this Court held an auction and approved the sale. *See, e.g.*, *Cent. W. Va. Energy Co. v. Wheeling–Pittsburgh Steel Corp.*, No. 06–3906, 2007 WL 1675004, at *11 (6th Cir. Jun. 11, 2007) (recognizing bankruptcy courts have the jurisdiction and power under case law and 11 U.S.C. § 105(a) to issue injunctions as may be necessary or appropriate to effectuate or prevent the frustration of orders that they have previously issued).

Not only will this injunction prevent the Plaintiff and the Defendants from unnecessarily incurring attorneys' fees; it will also minimize the possibility that the state court will make findings and conclusions, and issue a judgment, that conflict with this Court's Sale Order as well as this Court's enforcement of the Sale Order. *See Jacksonville Blow Pipe Co.*, 244 F.2d 394 at 400 ("[N]othing would be as productive of friction between the state and the federal courts as to

permit a state court to interpret and perhaps to upset such a judgment of a federal court."); *Sw. Airlines Co. v. Tex. Intern. Airlines, Inc.*, 546 F.2d 84, 91 (5th Cir. 1977) (citing *Woods Expl. & Prod. Co.*, 438 F.2d 1312) ("Friction is also avoided by an injunction that: prevents multiple litigation of the same cause of action and . . . assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment which the Supreme Court may or may not decide to review.").

In *Christ Hospital*, both the bankruptcy court and the district court (which affirmed the bankruptcy court's ruling) cited § 105 as the basis for imposing the injunction. This Court sees no reason why it should not do the same, and therefore finds that § 105 is, in and of itself, sufficient to enjoin the Defendants from prosecuting the State Court Suit. The Court relies upon its § 105 powers in issuing this injunction in order "to prevent an abuse of process" by the Defendants—i.e., collaterally attacking the Sale Order.

Aside from its reliance upon § 105(a), however, this Court also finds that the Plaintiff has satisfied the requisite elements for any party outside of bankruptcy to obtain an injunction. The Court now examines these factors below.

### E. The Law Regarding Preliminary Injunctions

"The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The party seeking preliminary injunctive relief must establish four prerequisites in order to be issued a preliminary injunction:

> (1) a substantial likelihood that the movant will prevail on the merits;
> (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted;
> (3) the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent; and

(4) granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974).  The movant has the burden of persuasion on each of the elements of this four-prong test.  *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 389 (5th Cir. 1984).  As set forth below, this Court finds that the Plaintiff has met her burden with respect to each of the above-referenced four elements.

1. Likelihood of Success on the Merits

First, the Court must determine whether there is a substantial likelihood that the Plaintiff will prevail on the merits in the Complaint in this adversary proceeding.  "To evaluate the plaintiff's likelihood of success we determine what is the proper standard to be applied in evaluating plaintiff's claims, and then we apply that standard to the facts presented in the record." *Miss. Power*, 760 F.2d at 622. Here, the Plaintiff asserts that "[t]here is substantial likelihood that [the] Plaintiff will prevail on the merits in this Adversary Proceeding, as case law and supporting facts evidence the identity between the State Claims and [the Sale Order Claims] sold to [the] Plaintiff." [Adv. Doc. No. 1, p. 10 of 14].

This Court agrees.  As the discussion in Sections C(1)–(2) reflects, the Plaintiff—and *only* the Plaintiff—owns the Fraud Claim and the Fiduciary Duty Claim.  This is so because: (1) the Fraud Claim and the Breach of Fiduciary Duty claim belonged to the Debtor on the Petition Date; (2) therefore, the Fraud Claim and the Fiduciary Duty Claim became property of the Debtor's estate upon the Petition Date; (3) the Fraud Claim and the Fiduciary Duty Claim were part of the universe of claims comprising the Sale Order Claims; (4) the Plaintiff purchased the Sale Order Claims at the auction; and (5) the Trustee executed a Bill of Sale after the auction expressly conveying the Sale Order Claims to the Plaintiff.  [*See* Findings of Fact Nos. 19, 20 & 21].

36

As for the Contract Claim, as Section C(3) explains, there is a substantial likelihood that the Plaintiff will prevail at trial because the Defendants have no contract upon which to sue Krasoff due to Tauch's judicial admission that the MOU was never consummated. And, even if the MOU can be considered an enforceable contract, KRD fails to demonstrate that it has a direct claim against Krasoff under the MOU. Instead, the Contract Claim is a derivative claim that is now owned by the Plaintiff, just like the Plaintiff owns the Fraud Claim and the Fiduciary Duty Claim.

### 2. Threat of Irreparable Harm

Having determined that there is a substantial likelihood that the Plaintiff will prevail on the merits, this Court must next determine whether the Plaintiff will suffer irreparable injury if an injunction is not granted. The Fifth Circuit has described an injury as "irreparable" if it "cannot be undone by a monetary remedy." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985). Here, the Plaintiff argues that she will suffer irreparable harm by incurring additional attorneys' fees and expenses that will not be recoverable from the Defendants. [Hr'g Tr. 25:21–26:17, May 25, 2016]. The Defendants contend that because the Plaintiff can recover a money judgment against them in the State Court Suit, the Plaintiff cannot satisfy this second element.

This Court disagrees. There is no question that as a general rule, "economic loss usually does not, in and of itself, constitute irreparable harm because such losses are compensable by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal citations omitted). However, the Supreme Court has stated that "[i]f expenditures cannot be recouped, the resulting loss may be irreparable." *Phillip Morris USA Inc. v. Scott*, 131 S.Ct. 1, 4 (2010). Or, as the Fifth Circuit has stated: "The absence of an available remedy by

which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury." *Enter. Int'l, Inc.*, 762 F.2d at 473. Other circuits have also recognized this exception. *See, e.g., Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("Difficulty in collecting a damage judgment may support a claim of irreparable injury . . . If [Movant] cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it."); *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. Appx. 779, 782 (2d Cir. 2010) ("[T]he exception . . . is rooted in the fact that insolvency may render otherwise compensable harm irreparable because 'there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.' ").

At the TI Hearing, the Plaintiff gave credible and extensive testimony that KRD's continuation of prosecution of the State Court Suit would result in harm because the Plaintiff has "incurred thousands and thousands and thousands of dollars in legal fees, loss time and expenses in dealing with this [litigation]." [Hr'g Tr. 25:10–12, May 25, 2016]. Further, the Plaintiff credibly testified that Tauch "is notorious for hiding assets, for not paying judgments, not repaying loans." [Hr'g Tr. 25:21–22, May 25, 2016]. She further testified that Tauch has accrued "over $14 million of judgments across this country." [Hr'g Tr. 25:23–24, May 25, 2016]. Finally, the Plaintiff provided credible and uncontroverted testimony that with respect to a judgment that she had against Tauch, the Plaintiff recovered it by sheer luck and that "it took approximately nineteen months and perhaps close to a hundred thousand dollars of attorneys' fees to try to force a collection and a payment of that judgment." [Hr'g Tr. 26:2–5, May 25, 2016].

Under all of these circumstances, this Court finds that the Plaintiff has demonstrated that there will be irreparable harm if this Court does not enjoin the Defendants from prosecuting the State Court Suit. If this Court does not issue a temporary injunction, there is little doubt that the Defendants will vigorously prosecute the State Court Suit; the Plaintiff will incur substantial fees defending in that forum; and even if the Plaintiff—through the eventual filing of a counterclaim in the State Court Suit—can recover a judgment against the Defendants for the amount of those fees, the Plaintiff will unlikely be able to collect the judgment.

Aside from the Plaintiff establishing the threat of irreparable harm through introducing credible testimony that she will be unable to collect a judgment from the Defendants, there is a separate and distinct basis for this Court to find that threat of irreparable harm is present in this dispute. As discussed previously in this Opinion, KRD's prosecution of the State Court Claims is a collateral attack on the Sale Order. If this Court were to allow KRD to continue prosecuting the State Court Suit, the long-standing judicial policy prohibiting collateral attacks would be violated, thereby undercutting the orderly process of law, which results in irreparable harm. *See, e.g.*, *In re CDP Corp., Inc.*, 462 B.R. 615, 632–33 (Bankr. S.D. Miss. 2011) (finding that "there is a threat of irreparable harm" where a collateral attack on a sale order is being made); *Goldberg v. Rosen (In re Niroomand)*, 2012 WL 3627635, at * 7 (Bankr. S.D. Fla. Aug. 21, 2012) ("Inasmuch as the primary purpose behind the Barton Doctrine and § 959(a) is to protect the bankruptcy estate and maintain the integrity of the bankruptcy system, irreparable harm will likely result if the State Court Action is allowed to continue."); *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 829–30 (Bankr. M.D. Fla. 2002) (collateral attack on the bankruptcy court's jurisdiction and orders in the courts of another jurisdiction, if allowed to continue, would result in irreparable harm to the bankruptcy policy of the United States).

In sum, for two separate and distinct reasons, this Court finds that the Plaintiff has met her burden to establish the threat of irreparable harm.

3. Injury to Plaintiff Outweighs Injury to KRD

The third factor requires this Court to essentially balance the equities between the opposing parties. *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). Specifically, this Court must balance the harm that would be suffered by the Plaintiff if the preliminary injunction is denied against the possible harm that would result to the Defendants if the injunction is granted.

The Plaintiff argues that "the harm which may result to [the] Plaintiff outweighs the harm that may be sustained, if any, by Defendants if the preliminary injunction were granted." [Adv. Doc. No. 1, p. 10 of 14]. Indeed, at the TI Hearing, counsel for the Plaintiff argued that the lack of issuing a preliminary injunction would harm the Plaintiff more so than any harm the Defendants may suffer. [Hr'g Tr. 96:4–16, May 25, 2016]. Whereas the Plaintiff will suffer irreparable and non-compensable harm, counsel for the Plaintiff contends that there is no evidence that the Defendants will suffer any harm if an injunction were to be issued; and, the only "harm" that would affect the Defendants, if any, is the delay in the prosecution of the State Court Suit. [Hr'g Tr. 96:16–19, May 25, 2016]. Conversely, the Defendants argue that the status quo would not be preserved if an injunction were to be granted against KRD. [Hr'g Tr. 100:25–101:5, May 25, 2016]. The Defendants contend that the Plaintiff seeks a relief that would "completely alter the status quo" and prevent KRD's rights to assert its State Court Claims against Krasoff. [*Id.*].

In the suit at bar, the Plaintiff must show that the alleged incurring of non-recoverable expenditures and fees outweighs any injury that would occur from delaying KRD from

continuing to prosecute the State Court Suit. There is no question that if the State Court Suit was to proceed, the Plaintiff would immediately be required to spend more time and attorneys' fees that will likely be non-recoverable. Indeed, the Plaintiff gave credible testimony regarding the irreparable harm that would result, as discussed above. While the Court recognizes that KRD may be slightly inconvenienced in the pause of the State Court Suit, the Court finds that no significant harm, if any, will result from a temporary halt. In fact, this Court has scheduled this adversary proceeding for trial on the merits on an expedited basis for July 26, 2016; therefore, there will be virtually no delay to KRD, thereby ensuring that there will be no diminution in the value of the claims that KRD is asserting in the State Court Suit if this Court grants a preliminary injunction but ultimately determines not to impose a permanent injunction. Thus, the Court finds that the weighing of the harms involved in this case would favor protecting the Plaintiff from potentially incurring substantial non-recoverable monetary damages.

    4. Public Interest

    The United States Supreme Court and the Fifth Circuit have stressed the importance of this particular factor. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)) ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); *Miss. Power*, 760 F.2d at 625–26 (emphasizing the increasing importance of weighing the public interest, beyond the interests of the named litigants, when considering a preliminary injunction). Thus, this Court gives great weight to the importance to the public interest in determining whether to grant the Plaintiff preliminary injunctive relief.

    Here, the public interest is in ensuring that final, non-appealable orders—here, the Sale Order—are enforced and that parties who have had due process and participated in the legal

system are not allowed to thumb their noses at, and take actions that directly contradict, these orders. Specifically, this Court held an auction at which not only the Plaintiff, but also the Defendants, participated. [Finding of Fact No. 20]. The Plaintiff outbid the Defendants fairly and squarely, and purchased the Sale Order Claims from the Trustee for the sum of $31,500.00. [*Id.*]. The Sale Order Claims include all three State Court Claims (assuming the MOU constitutes a contract) that KRD is now prosecuting in the State Court Suit. Stated differently, KRD has stolen these claims from the Plaintiff.

The Defendants' actions in the State Court Suit make a mockery of the auction that this Court held in 2015 and of the Sale Order, and also make a mockery of sworn statements under oath made by Tauch in the Debtor's SOFA. Issuing an order now to temporarily enjoin the Defendants from prosecuting the State Court Suit will not only **not** disserve the public interest; it will very much promote the public interest. It is in the public interest for bankruptcy courts to enforce their own orders and to ensure that the integrity of the bankruptcy system is upheld. *See Matter of Blocker*, 411 B.R. 521, 523 (Bankr. S.D. Ga. 2009) (". . . the public interest is best served if the parties are not permitted to make a mockery of the previous final Consent Order . . . ."). Further, it is in the public interest for bankruptcy courts to ensure that purchasers of assets from bankruptcy trustees are protected in order to encourage more individuals and entities in the future to purchase assets from bankruptcy estates. *See In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (in refusing to reopen bidding after the auction had closed, this Court held that "[t]he public in general, and all participants at auctions in particular, need to have confidence in the judicial system."). Additionally, it is in the public interest to ensure that parties are not allowed to play fast and loose with their sworn statements—which is what KRD (through Tauch) is doing by suing on a contract (i.e., the MOU) that Tauch swore under oath in the SOFA

was never consummated.  [Finding of Fact No. 16].  Finally, the public interest will be served by granting a preliminary injunction because it will bring to a screeching halt the State Court Suit which, if allowed to go forward, will be extremely expensive for the parties.  As one court has said:

> The public interest will be served by granting a preliminary injunction. Pursuing dubious law suits and thereby causing increased defense costs and attorney's fees which may ultimately result in yet another bankruptcy is not in the public interest. In these times of excessive litigation it surely [cannot] be in the public interest to further clog the dockets of two courts and spend taxpayers' money on questionable litigation.

*In re Archambault*, 174 B.R. 923, 935 (Bankr. W.D. Mich. 1994).

In sum, the Plaintiff has satisfied all four elements required for the issuance of a temporary injunction.

## V. Conclusion

Boiled down to a nutshell, KRD's prosecution of the State Court Claims amounts to a "sour grapes" attitude towards the May 20, 2015 auction in particular and the judicial process in general.  KRD, through its sole owner, Tauch, actively participated at the auction held in May of 2015 in this Court.  The Plaintiff outbid KRD at the auction, and therefore purchased the Sale Order Claims for good and valuable consideration.  KRD, unhappy with this result, decided to disregard the Sale Order and go after Krasoff with a pitchfork by filing the State Court Suit. And, KRD justified its actions by disingenuously stating in the State Court Suit that "the claims K Realty [KRD] is asserting against Krasoff in this proceeding are direct claims that, under applicable law, K Realty possesses directly against Krasoff. This proceeding is neither a derivative suit, nor an assertion of derivative claims against Krasoff that might be owned by the Company, a debtor in bankruptcy." [Plaintiff's Ex. No. 1, p. 3 of 25].

43

Nothing could be further from the truth: the State Court Claims are derivative claims, pure and simple. The filing and the prosecution of the State Court Suit is nothing more than a full frontal attack on this Court's Sale Order and the integrity of the auction process in this bankruptcy court. The Court now brings a halt to this improperly-filed State Court Suit by entering the temporary injunction requested by the Plaintiff.

An order consistent with this Memorandum Opinion is entered simultaneously herewith.


Signed on this 1st day of July, 2016.

Jeff Bohm
United States Bankruptcy Judge